IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RICARDO RODRIGUEZ PANTOJAS,<br><br>**Plaintiff,**<br><br>v.<br><br>FIRSTBANK PUERTO RICO, *et al.*,<br><br>**Defendants.** | CIVIL NO. 22-1600 (JAG) |

### MEMORANDUM AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court is Ricardo Rodriguez Pantojas' ("Plaintiff") Motion for Partial Summary Judgment, Docket No. 29; FirstBank Puerto Rico's ("FirstBank" or "Defendant") Motion for Summary Judgment, Docket No. 31; and the Parties' briefing on the privilege issue surrounding Plaintiff's Exhibit N, Docket Nos. 47 and 48. For the reasons set forth below, the Court finds that Plaintiff's Exhibit N is not protected by the attorney-client privilege. The Court also **GRANTS** Plaintiff's Motion for Partial Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

### BACKGROUND

On June 26, 2001, Plaintiff opened a FirstBank credit card account ending in #1143 ("CC 1"). Docket Nos. 30, ¶ 1; 32, ¶ 1. On September 10, 2008, Plaintiff opened a second FirstBank credit card account ending in #6432 ("CC 2"). Docket Nos. 30, ¶ 2; 32, ¶ 2. On December 24, 2015, Plaintiff filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code. Docket Nos. 30, ¶ 3; 32, ¶ 3. Defendant FirstBank was scheduled as a creditor holding both CC 1 and CC 2. Docket Nos. 30, ¶ 4; 44, ¶ 4. Defendant received notice of Plaintiff's bankruptcy petition. Docket Nos. 30,

**CIVIL NO.** 22-1600 (JAG)                                                                 2

¶ 5; 32, ¶ 4; 44, ¶ 5. Defendant filed a Proof of Claim in the bankruptcy proceedings for the amounts owed on both credit cards. Docket Nos. 30, ¶ 6; 44, ¶ 6. On January 22, 2021, the Bankruptcy Court entered a Discharge Order. Docket Nos. 30, ¶ 7; 32, ¶ 6. Defendant received notice of the Discharge Order. Docket Nos. 30, ¶ 8; 44, ¶ 8. Plaintiff did not incur any new debt with Defendant after the Order. Docket Nos. 30, ¶ 11; 44, ¶ 11. After receiving notice of the discharge, Defendant continued to report debts owed on CC 1 and CC 2 as "charged off," "past due," and "included in bankruptcy." Docket Nos. 30, ¶¶ 13-14, 16-17; 30-7 at 4-5; 31 at 3; 44, ¶¶ 13-14, 16-17. On November 5, 2021, Plaintiff obtained a consumer credit report prepared by CoreLogic Credco ("First Report") that reported Plaintiff's FirstBank credit card accounts as "charged off," "past due," and "included in bankruptcy." Docket Nos. 30, ¶ 12; 44, ¶ 12. On June 13, 2022, Plaintiff obtained a second credit report from Equifax that contained the same information. Docket Nos. 30, ¶ 15; 30-8 at 6, 10; 44, ¶ 15. On August 8, 2022, Plaintiff disputed the information being reported by FirstBank to credit reporting agencies. Docket Nos. 30, ¶ 18; 44, ¶ 18. On October 11, 2022, Plaintiff obtained a third credit report from Equifax that contained the same information. Docket Nos. 30, ¶ 20; 30-9 at 5, 8; 44, ¶ 20.

## ANALYSIS[1]

When a debtor receives a bankruptcy discharge, the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).

---

[1] If Exhibit N was protected by the attorney-client privilege, such privilege was waived when Defendant's counsel produced the document to Plaintiff as part of discovery. *See XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16, 22 (1st Cir. 2003) ("When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised.").

**CIVIL NO.** 22-1600 (JAG)                                                                 3

Courts have interpreted section 524(a)(2) expansively, "holding that it prohibits any action that has the effect of pressuring a debtor to repay a discharged debt, even if the means are indirect." *Jones v. Citimortgage, Inc.*, 666 Fed. App'x. 766, 774 (9th Cir. 2016). The First Circuit has adopted a three-prong test to determine whether violations of discharge injunctions occurred. *Bates v. CitiMortgage, Inc.*, 844 F.3d 300, 304 (1st Cir. 2016). "To prove a discharge injunction violation, a debtor must establish that the creditor (1) has notice of the debtor's discharge . . . ; (2) intends the actions which constituted the violation; and (3) acts in a way that improperly coerces or harasses the debtor." *Id*. Moreover, the Supreme Court has stated that courts should determine violations of a discharge order under an objective standard. *Taggart v. Lorenzen*, 587 U.S. 554, 565 (2019). "A court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Id.*

FirstBank concedes the first prong by admitting "it received notice of the filing of the petition and the discharge order." Docket No. 43 at 12. Therefore, the Court will only address the last two prongs of the test. Defendant argues—without providing any case law in support—that the second prong is not met because, while it did intend to submit the reports to the credit reporting agencies, "the Court has to find that the act itself is a violation of the discharge order in addition to being intended" and, in this case, the argument continues, "the simple act of correctly reporting the balance owed at the time to a credit agency by itself is not a violation of the discharge order." *Id.* The main problem with this argument is that Defendant did not engage in a "simple act of correctly reporting."

Plaintiff claims Defendant violated the bankruptcy discharge order by failing to update Plaintiff's credit report and misreporting Plaintiff's discharged consumer debts. Docket No. 29 at

**CIVIL NO. 22-1600 (JAG)**                                                                                            4

20. According to Plaintiff, FirstBank falsely reported to credit agencies that (1) Plaintiff's CC 1 owed $6,447, had a "charge off" of $6,447, and was "past due" for $6,447; and (2) Plaintiff's CC 2 owed $1,613, had a "charge off" of $1,613, and was "past due" for $1,613. Docket No. 29, ¶¶ 13-14, 16-17, 21. On the other hand, Defendant claims "[n]othing could be farther from the truth" because "[w]hile Section 524 of the Bankruptcy Code relieves the debtor from personal liability for the debts, it does not actually erase the debt." Docket No. 31 at 1-2. Per Defendant, its acts do not constitute an effort to collect because it was an act to "honestly inform the public whether an outstanding debt was paid or not" and "[t]hat is exactly the purpose of the Credit Bureaus." *Id.* at 11.

Defendant claims that "[a]lthough the 1st Circuit Court of Appeals has not resolved this controversy, multiple other circuits, district courts and bankruptcy courts across the country have ruled that simply reporting to credit agencies that a discharged debt is outstanding is not a violation of the discharge injunction." Docket Nos. 43 at 9; 45 at 4. To support its argument, Defendant cites several cases, none of which are binding on this Court: (1) *Caldwell v. Redstone Fed. Credit Union*, 2018 U.S. Dist. LEXIS 121524, *26 (N.D. Ala. 2018)[2]; (2) *Bruno v. First USA Bank, N.A. (In re Bruno)*, 356 B.R. 89, 92 (Bankr. W.D.N.Y. 2006)[3]; (3) *Irby v. Fashion Bug (In re Irby)*, 337 B.R. 293,

---

[2] Not only is this an unreported case, but the issue in *Caldwell* was whether defendants engaged in affirmative activity sufficient to violate the discharge injunction by (1) failing to update public records and (2) failing to note the changed status of a discharged debt on the Plaintiff's credit report. 2018 U.S. Dist. LEXIS 121524, *23. The Court found no violation of the discharge injunction had been committed because plaintiffs only identified the defendant's *inaction* and the injunction prohibits any *action*. *Id.* at *10, 32-34. Thus, *Caldwell* is distinguishable from the present case because here Plaintiff identifies a series of actions taken by FirstBank, including continuing to engage in allegedly false reporting after the Discharge Order. *See* Docket No. 31 at 3.

[3] In B*runo*, the Court found that "Chase's failure to notify a credit reporting agency that its pre-petition report of an account delinquency has ended in a bankruptcy discharge does not violate 11 U.S.C. § 524." 356 B.R. at 93. Like in *Caldwell*, the Court considered that creditors are usually not required to take

**CIVIL NO.** 22-1600 (JAG)                                                                                                  5

294 (Bankr. N.D. Ohio 2005)[4]; (4) *Mahoney v. Wash. Mut., Inc. (In re Mahoney)*, 368 B.R. 579, 582 (Bankr. W.D. Tex. 2007)[5]; and (5) *Keller v. New Penn Fin., LLC (In re Keller)*, 568 B.R. 118, 123 (B.A.P. 9th Cir. 2017).[6] *Id.*

---

affirmative steps to implement bankruptcy decisions. *Id.* at 92. However, in *Bruno*, the Court did acknowledge that "if the report to the credit reporting agency had occurred after the Debtor's discharge — then the [] case would squarely present the question of whether 11 U.S.C. § 524 should be interpreted in the same way that courts have interpreted [the Fair Debt Collection Practices Act and the Fair Credit Reporting Act]." *Id.* at 91. *Bruno* is distinguishable from the present case because the present case relates to reports made post-discharge.

[4] In *Irby*, Defendants continued to report that there was "a balance owed on the debt that was discharged." 337 B.R. at 294. The Court concluded that "nothing had been alleged, beyond the mere reporting of an obligation." *Id.* at 297. Nevertheless, the Court recognized that reporting a discharged debt is not "immune from the reach of the discharge injunction . . . for example, if the act of reporting a debt was undertaken for the specific purpose of coercing the debtor into paying the debt, a violation of the discharge injunction could be established." *Id.* at 296. Therefore, *Irby* is also distinguishable because here Defendants continued to report the debts as "past-due" and/or "charge off," and failed to report that the debts were discharged in bankruptcy.

[5] In *Mahoney*, the defendants reported the plaintiff's debt as "a delinquent debt, which it charged off as uncollectable with a 0 balance (due to the charge off)." 368 B.R. at 593. The Court found that defendants' report did not violate the discharge because "for any act to count as an act that violates the discharge, there must be evidence of an *effective* connection between the conduct of the creditor and the collection of the debt." *Id.* at 589 (emphasis added). The Court further stated that "[i]f the tactic is effective, and the act was done intentionally, then a violation of the discharge can be made out." *Id.* This case is also distinguishable because although the debt was reported as delinquent and charged off, it was also reported as uncollectable with a balance of 0. In any case, the Court believes that the holding in *Mahoney* diminishes the protections granted in section 524 by requiring additional hurdles not contained in the statute. As the Court stated in *In re Biery*, "[t]his argument makes a mockery of the discharge injunction for debtors and creditors alike." 543 B.R. 267, 289 (Bankr. E.D. Kentucky 2015). *In re Biery* noted that some courts "have held that [] an act [such as reporting a discharged debt as unpaid to credit agencies] is an act to collect a discharged debt if, and only if, its effect is to coerce repayment." *Id.* "Conversely, when a post-discharge communication facially demands repayment of a discharged debt, no court has held it must inquire into whether the demand was effective to determine whether the demand is an enjoined act. It may be that a post-discharge payment demand will be ineffective because discharged debtors will understand that the demand is improper and that they have no obligation to pay; yet, this has no bearing on whether the act itself violates the discharge injunction." *Id.*

[6] In *Keller*, the issue before the Court was not the accuracy of what was reported, but rather whether reporting a payment as past due or late violates the automatic stay. 568 B.R. at 121, 123. Therefore, *Keller* is distinguishable because it deals with the automatic stay provision of the Bankruptcy Code and the present case deals with the discharge injunction, a separate provision of the Bankruptcy Code. And in any case, *Keller* also differs from the present case because the controversy pertained to a violation of the automatic

**CIVIL NO.** 22-1600 (JAG) 6

To start, the cases cited by Defendant are distinguishable from the present case. Moreover, Defendant bypasses the courts' rationale, which requires analyzing the accuracy of the information reported at the time it was reported. Even though the Court agrees that a creditor of a discharged debt may engage in accurate reporting without violating the discharge injunction, the Court disagrees that Defendant engaged in accurate or "simple reporting." *Id.; see also* 15 U.S.C. § 1681c(a)(1). *Caldwell*, *Bruno*, *Irby*, and *Keller* all have one common denominator: the information was accurate and not misleading at the time it was reported.[7] *See also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) ("[A] consumer report that contains technically accurate information may be deemed "inaccurate" if the statement is presented in such a way that it creates a misleading impression.").

A creditor of a discharged debt may report the debt, but it must also provide sufficient information to give notice that the amount was discharged, and the debt is unenforceable. Reporting debts as "due," "past due," "delinquent," or "outstanding" suggests that a creditor can still enforce the debt. As such, said reporting is accurate only if done before the filing of a bankruptcy petition. *See Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 487-88 (Bankr. S.D.N.Y. 2020) ("[A] credit report that continues to show a discharged debt as 'outstanding,' 'charged off,' or 'past due' is unquestionably inaccurate and misleading, because end users will construe it to mean that the lender still has the ability to enforce the debt personally against the

---

stay, the debt reported as past due was a secured debt and the debtor did not challenge the accuracy of the credit reporting.

[7] In *Caldwell* and *Bruno*, no violation was found because the debts had been reported before the bankruptcy petition was filed. In *Irby*, the balance owed was accurately reported as "discharged." And in *Keller*, the balance reported as "due" was also accurate because it corresponded to a loan secured by real property, which constitutes a secured debt.

**CIVIL NO.** 22-1600 (JAG)                                                                                                7

debtor[;] that is, that the debtor has not received a discharge, that she has reaffirmed the debt notwithstanding the discharge, or that the debt has been declared non-dischargeable."). Reporting a debt as "charged off" also suggests that a debt is enforceable, but a lender wrote it off; thus, such reporting is accurate only if it specified that it was "charged off due to bankruptcy." *See Alexander v. Navy Fed. Credit Union*, 2025 U.S. Dist. LEXIS 170939, *8 (E.D.P. 2025) ("A past due balance does not vanish when a lender classifies an account as 'charged off'; rather courts hold that the 'past due' reference is factually correct because that debt remains legally enforceable."). And only reporting that a debt was "included in bankruptcy" could suggest that the debt has not been discharged; thus, such reporting is accurate only if discharge has not been entered.

After receiving notice of the Discharge Order, FirstBank continued to report Plaintiff's debt as "charged off," "past due," and "included in bankruptcy," but did not specify that the debt had been discharged in bankruptcy. Docket No. 30-7 at 4-5. Accordingly, the Court holds that FirstBank reported misleading and inaccurate information by failing to include the unenforceable legal status of the debt. This constitutes a violation of the bankruptcy discharge because such willfully inaccurate reporting has no other purpose than harassing the debtor to indirectly collect or recover a discharged debt. *See Bates*, 844 F.3d at 306 ("Reporting false or outdated information to a credit agency in an attempt to coerce payment on a discharged debt can violate the discharge injunction. The reason: negative credit reports have consequences—like reducing creditworthiness, and with it the debtor's ability to get loans in the future—and so a false report might coerce a debtor into paying a discharged debt to avoid those consequences. Evidence that a creditor refused to change a false or outdated report can give rise to an inference that the creditor intended to coerce the debtor into paying the discharged debt." ("cleaned up")); *see also In re Torres*, 367 B.R. at 486 ("Other courts have had no difficulty recognizing that false or outdated reporting

**CIVIL NO.** 22-1600 (JAG)                                                                                      8

to credit reporting agencies, even without additional collection activity, can constitute an act to extract payment of a debt in violation of section 524(a)(2)."); *see also McIntyre v. RentGrow, Inc.*, 34 F.4th 87, 90-91 (1st Cir. 2022) ("Recognizing the high stakes that credit reporting portends for consumers, the FCRA requires that [w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."); 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.").

## CONCLUSION

For the aforementioned reasons, the Court hereby **GRANTS** Plaintiff's Motion for Partial Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Tuesday, September 30, 2025.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge